421 So.2d 476 (1982)
Jackie Lee PHILLIPS
v.
STATE of Mississippi.
No. 53469.
Supreme Court of Mississippi.
October 27, 1982.
Binder, Kirksey & DeLaughter, William B. Kirksey, Alvin M. Binder, Jackson, for appellant.
Bill Allain, Atty.Gen. by Billy L. Gore, Asst.Atty.Gen., and Bill Patterson, Sp.Asst. Atty.Gen., Jackson, for appellee.
Before SUGG, P.J., and BROOM and BOWLING, JJ.
BROOM, Justice, for the Court:
Enhancement of punishment under Mississippi Code Annotated § 99-19-81 (Supp. 1981), our "habitual criminals" statute, is highlighted in this case appealed from the Circuit Court of Coahoma County, the Honorable Elzy J. Smith, Circuit Judge. Defendant Jackie Lee Phillips pled guilty to burglary, and now challenges the sentencing judge's consideration of an alleged "invalid conviction of escape from Kentucky penitentiary" as basis for enhancement of punishment. As an habitual offender, Phillips was sentenced to seven years imprisonment and adjudicated as not entitled to "parole or probation during the term of said sentence." We affirm.
Sole argument made is:

*477 THE LOWER COURT ERRED IN CONSIDERING AN INVALID CONVICTION OF ESCAPE FROM A KENTUCKY PENITENTIARY FOR THE PURPOSE OF ENHANCEMENT OF PUNISHMENT UNDER THE HABITUAL OFFENDERS STATUTE, MISS. CODE ANN., SECTION 99-19-81 (SUPP. 1981).
On July 8, 1981, defendant Phillips was indicted for burglary of Clinic Discount Drugs in Clarksdale, Mississippi. As subsequently amended, the indictment charged him with habitual offender status under Mississippi Code Annotated § 99-19-81 (Supp. 1981). Two prior state court convictions in Kentucky were the basis for charging Phillips with habitual offender status. The first such conviction, in the Circuit Court of McCracken County, Kentucky, on February 15, 1968, was for voluntary manslaughter, for which defendant Phillips was sentenced to a 21-year prison term. While serving his sentence on the voluntary manslaughter conviction, he escaped, was apprehended, pled guilty to the escape charge, and was sentenced to an additional three years in the Circuit Court of Lyons County in Kentucky. This conviction for escape was the second conviction charged in the defendant's indictment in the present case.
At trial in the instant case, the defendant, voluntarily and intelligently, and upon advice of counsel, pled guilty to the charge of burglary. Subsequently, the trial court conducted a hearing, pursuant to Rule 6.04, Mississippi Uniform Criminal Rules of Circuit Court practice, in order to determine the propriety of sentencing under Mississippi's habitual offender act. At this hearing the prosecution and defense stipulated to the defendant's previous Kentucky convictions as follows:
The parties hereto stipulate and agree that the instant stipulation may be introduced into evidence in the "Habitual" phase of any trial in the above indictment numbers and the same may be used by either party as evidence in this cause without objection by the other party and further that all arguments as to the weight and sufficiency of any item of evidence contained herein are expressly waived.
After entering this stipulation into the record, the prosecution indicated that it would rely upon the stipulation for the purposes of establishing the defendant's habitual offender status. The defendant contended that he was not properly designated as a habitual offender, attacking the Kentucky escape conviction as being constitutionally invalid because he had not "knowingly and voluntarily" pled guilty. Defense counsel filed a certified copy of Phillips' conviction, including the minutes of the trial court which read as follows:
 No. 2327
 COMMONWEALTH OF KENTUCKY PLAINTIFF
 VS. ESCAPING FROM THE PENITENTIARY
 JACKIE PHILLIP DEFENDANT.
This cause coming on for trial, there came the attorney for the Commonwealth, there came the defendant in person and by his attorney William R. Young who was appointed by the Court to represent said defendant. Defendant acknowledged identity of person, waived formal arraignment, and both defendant and his attorney stated to the Court the defendant wished to enter a plea of guilty. The Court then made the following inquiries of the defendant; (a) whether this was his personal decision, (b) whether such desired plea on his part was voluntary, (c) whether he felt he had been properly and efficiently represented by counsel, and (d) whether he knew he had the right to a trial by jury with assistance of counsel.
To all of these questions the defendant replied in the affirmative.
Taking the stand himself, the defendant testified that he had pled guilty to the charge of escape in his 1971 Kentucky conviction in exchange for a prison official's promise that if he did so he would be let out of solitary confinement. He also testified that he had not been informed at the time of his entering the guilty plea that such a conviction could potentially be used in future criminal proceedings for the purpose of determining his status as an habitual offender. *478 After hearing Phillips' testimony, and reviewing the evidence in the present cause, Circuit Judge Smith held that sentencing under § 99-19-81, supra, was appropriate. Thus he sentenced defendant Phillips to seven years in prison without parole or probation, as provided by the statute.
At this stage of the development of the instant case, the normally staid and methodical appellate procedure acquired unusually dramatic flavor. On November 20, 1981, the defendant filed his appellant's brief, assigning the above described error. On January 6, 1982, the state filed its appellee's brief, taking the position that the trial court's actions had been correct and proper. On January 18, 1982, the defendant responded to the state's brief with "The Rebuttal Brief of Appellant". Then some rather novel developments occurred. On April 30, 1982, the defendant filed "Appellant's Supplemental Brief" alleging that on March 18, 1982, Judge Willard B. Paxton, Circuit Court Judge of Lyons County, Kentucky, had vacated two of the defendant's Kentucky convictions. Therefore, the defendant took the position that his charge of burglary should be reversed, both as to the actual charge and as to the sentencing under the habitual offender act. On May 6, 1982, the state filed the appellee's "Supplemental Response", conceding that in view of the vacation of the prior convictions in Kentucky, sentencing of the defendant under the habitual offender's statute required a reversal of the case but contending that the defendant's guilty plea of burglary should remain in effect, and the case should be remanded for resentencing only. The next installment of this continuing saga transpired on July 2, 1982, when the state filed a "Supplement to Appellee's Supplemental Response", which contained affidavits indicating that one of the defendant's vacated convictions in Kentucky had been reinstated and that appeals on the vacation of the second sentence were presently pending. In view of this fact, the state (appellee) reversed its position and once again contended that the trial court's actions in sentencing defendant under the habitual offender's statute was correct and should be affirmed.
Viewing this imposing array of briefs, rebuttals, response briefs, supplemental response briefs, and supplemental response briefs containing allegations, affidavits, and arguments in a continual state of flux, the wisdom of our steadfast rule that consideration of matters on appeal is limited strictly to matters contained in the trial record becomes obvious. Legg v. Legg, 251 Miss. 12, 168 So.2d 58 (1964); Graham v. Graham, 214 Miss. 99, 58 So.2d 85 (1952); Gavin v. Gavin, 116 Miss. 197, 76 So. 879 (1917). See also State v. Cummings, 203 Miss. 583, 33 So.2d 636 (1948). Cases cited establish that our consideration of a case on appeal will be confined strictly to the record, both in terms of facts occurring prior to trial and to facts occurring since trial. This rule holds true regardless of the nature of the facts sought to be placed before this Court, or the sincerity of counsel in attempting to do so. As Justice Griffith stated in Alexander v. Hancock, 174 Miss. 482, 164 So. 772 (1935), on suggestion of error 174 Miss. 498, 165 So. 126 (1945):
We must decide cases on the facts shown by the record, not by assertions of fact made in briefs or suggestions of error, however sincere counsel may be in those assertions. Facts asserted to exist ought to, and must, be definitely proved and placed before us by a record thereof certified as required by law; otherwise we cannot, in law, know them.
Id. at 498, 165 So. at 126.
In accordance with this long-standing rule, our review of this case will include only those facts actually contained in the record and to those arguments contained in the appellant's brief, the appellee's brief, and the appellant's rebuttal brief. Stated differently, our task on appeal is to review the actions and decisions of the trial court judge within the context of the situation as it existed at that time.
No question was raised either at trial or upon appeal as to the existence of the prior convictions in Kentucky, the nature of those *479 convictions, or of the identity of Phillips as the person convicted. All of these matters were stipulated between the defendant and the state, and further stipulated was that the parties would "not ... challenge the weight or sufficiency of any item contained in the stipulation." Contemporaneously with this stipulation, the defendant specifically and with particularity reserved the right to challenge the constitutionality of the prior convictions and therefore their validity for use under the habitual offender statute. The question presented us is whether a defendant may attack the constitutional validity of a prior conviction (of another state) which is being used for the enhancement of punishment under our habitual offender statute, § 99-19-81, supra. The defendant would have us answer this question in the affirmative. He challenges the Kentucky escape conviction on the grounds that his guilty plea in Kentucky was neither voluntary, in that it was coerced by threats of solitary confinement, nor was it "knowing", because he was not informed that the conviction could be used in the future under an enhancement of punishment statute such as our § 99-19-81, supra.
In attacking his guilty plea in the Kentucky conviction, Phillips relies primarily upon two United States Supreme Court cases. First is Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), wherein the United States Supreme Court addressed itself to the subject of determining on appeal whether a plea of guilty had been "voluntary and knowing." The Supreme Court noted that a defendant's plea of guilty involved a waiver of several basic constitutional rights:
Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. Second, is the right to trial by jury. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491. Third, is the right to confront one's accusers. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. We cannot presume a waiver of these three important federal rights from a silent record.
What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought (Garner v. Louisiana, 368 U.S. 157, 173, 82 S.Ct. 248 [256] 7 L.Ed.2d 207, 219; Specht v. Patterson, 386 U.S. 605, 610, 87 S.Ct. 1209 [1212] 18 L.Ed.2d 326, 330) and forestalls the spin-off of collateral proceedings that seek to probe murky memories.
The three dissenting justices in the Alabama Supreme Court stated the law accurately when they concluded that there was reversible error "because the record does not disclose that the defendant voluntarily and understandingly entered his plea of guilty." [Boykin v. State], 281 Ala. [659] at 663, 207 So.2d [412] at 415.
Reversed.
395 U.S. at 242-44, 89 S.Ct. at 1711-12, 23 L.Ed.2d at 279-80 (emphasis added).
Having alluded to the nature of a guilty plea, and the importance that the "voluntary and knowing" aspect of any such plea appear on the face of any record of conviction, appellant Phillips cites Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). There the United States Supreme Court held that the constitutional infirmity of a prior Tennessee conviction, resulting from the lack of an affirmative showing of a knowing and intelligent waiver of the right to counsel, rendered that conviction's use impermissible in a Texas case for the purposes of determining habitual offender status. Burgett stated that the admission of a prior criminal conviction which is constitutionally infirm under Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d *480 799 (1963), was "inherently prejudicial" and noted that to allow the use of a constitutionally defective conviction for the purposes of enhancing sentencing constituted a new denial of the right to counsel and would completely undermine the court's holding in Gideon. The Court distinguished its holding in Burgett from its earlier decision in Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), wherein the Court upheld a Texas habitual offender statute against the allegations that such a statute was violative of the due process clause, by saying that in Spencer, the prior convictions used under the enhancement of punishment statute were not presumptively void.
Defendant Phillips asserts that reading Boykin and Burgett together leads to the conclusion that any prior conviction which is constitutionally defective as a result of an involuntary plea of guilty cannot be used to support enhanced punishment under an habitual offender statute such as Mississippi Code Annotated § 99-19-81 (Supp. 1981).
Prior to any examination of the merits of the defendant's contention that his plea of guilty to the 1971 Kentucky escape charge was neither knowing or voluntary, the threshold issue which must be addressed is the nature and extent of the trial court's role in examining the prior convictions sought to be used for the imposition of enhanced punishment under § 99-19-81, supra. The importance of this issue can be seen by an examination of the requirements which would be imposed upon the trial court by the adoption of the appellant's argument. Any time a court is seeking to apply the enhanced punishment provisions of our habitual offender statutes, that court would be required (according to argument) to in effect hold evidentiary hearings for the purpose of ascertaining and passing upon the constitutionality of any and all prior convictions sought to be utilized by the prosecution in determining a defendant's habitual offender status. The difficulties which would be thereby imposed upon trial courts are starkly outlined by the facts of the present case. Phillips reasons that in order to use his prior Kentucky convictions the trial court must hold an evidentiary hearing and determine the constitutionality of events transpiring over 10 years ago, in a jurisdiction hundreds of miles away. Witnesses and transcripts must be obtained. A high price in terms of time and money would be exacted from both the state and the defendant, culminating in a result which would be based in most cases upon fading memories and incomplete testimony. If the trial court's duty extends to such lengths, would not prior convictions also be subject to constitutional attack on such grounds as alleged illegal searches and seizures? The potential difficulties inherent in the defendant's position become readily apparent when viewed in the context of such factors.
Nonetheless, we address the nature and extent of the duties of the trial court in examining the defendant's prior convictions being used to establish his habitual offender status. In addressing the issue, we note that both Burgett and Boykin dealt with the situation where the record of the prior convictions were silent with respect to the question of whether the defendants in those cases had been afforded their respective constitutional protections. Prior to these decisions, courts in various jurisdictions, including Mississippi, when reviewing the record of a trial court operated under the assumption that, absent evidence to the contrary, the trial court was presumed to have done that which it should have done. Both Burgett and Boykin held that the rights of the defendants which were addressed by those cases were of such basic importance to the vitality of the American system of criminal justice that a presumption of the safeguarding of those rights could not arise from a silent record. The elimination of this presumption was noted by us in Osborne v. State, 404 So.2d 545 (Miss. 1981):
This court has long required the trial judge to determine that guilty pleas were voluntarily made. Carlton v. State, 254 So.2d 770 (Miss. 1971). Until Boykin, the determination by the judge was not required to be a part of the record. A *481 judgment raised a presumption that "what ought to have been done by the trial judge with respect to receiving such plea was done." Bullock v. Harpole, 233 Miss. 486, 495, 102 So.2d 687, 691 (1958).
404 So.2d at 547.
Thus this presumption of constitutional validity was removed by Burgett and Boykin only where the record was silent as to the "knowing and voluntary" waiver of counsel and plea of guilty. The United States Supreme Court in Burgett, supra, distinguished its holding in that case from its previous holding in Spencer, supra, which had upheld habitual offender statutes against a due process attack, by saying that the prior convictions which had been introduced in Burgett were presumptively void by virtue of their silence on the subject of waiver of counsel. Likewise in a subsequent decision the United States Supreme Court specifically described the new requirement which Boykin had imposed upon trial courts:
4. The requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized. See nn. 5 and 6 infra. The new element added in Boykin was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily.
Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), at n. 4.
At a hearing conducted by a trial court pursuant to Mississippi Uniform Criminal Rules of Circuit Court 6.04, for determining the defendant's status as an habitual offender, the prosecution must show and the trial court must determine that the records of the prior convictions are accurate, that they fulfill the requirements of § 99-19-81, supra, and that the defendant sought to be so sentenced is indeed the person who was previously convicted. See Pace v. State, 407 So.2d 530 (Miss. 1981); Malone v. State, 406 So.2d 37 (1981); Baker v. State, 394 So.2d 1376 (Miss. 1981).
Once the above mentioned factors have been ascertained, the trial court is not required to go beyond the face of the prior convictions sought to be used in establishing the defendant's status as an habitual offender. If, on its face, the conviction makes a proper showing that a defendant's prior plea of guilty was both knowing and voluntary, that conviction may be used for the enhancement of the defendant's punishment under the Mississippi habitual offender act.
An example of this type of inquiry into a conviction on its face was addressed by us in Malone v. State, supra, where a defendant, convicted for the sale of amphetamines, was sentenced under § 99-19-81, supra. As proof of prior convictions, the prosecution introduced a traffic ticket showing that the defendant had been cited for public drunkenness, possession of a controlled substance, and an expired driver's license. The prosecution alleged that the defendant had paid an $80 fine at the time of the issuance of the citation and therefore claimed that such payment constituted a plea of guilty, pursuant to Mississippi Code Annotated § 21-23-17 (1972). We held that the statute relied upon by the state was applicable only in instances of violations of traffic ordinances, and noted that "[I]n all criminal cases the usual procedure for prosecuting and docketing criminal cases must be followed. The uniform arrest ticket was not evidence of a conviction of defendant for the sale of controlled substance in the town of Soso." Id. at 39. Thus, it can be seen that, in addition to the inapplicability of the statute relied upon by the state, the lack of procedural safeguards rendered the use of such a "conviction" impermissible for the purpose of enhancing punishment.
In fulfilling its mission to determine whether a prior conviction is constitutionally valid for the purpose of enhancing a defendant's sentence, the trial court must not be placed in position of "retrying" the prior case. Certainly any such frontal assault upon the constitutionality of a prior conviction should be conducted in the form of an entirely separate procedure solely concerned with attacking that conviction. This role is neither the function nor the duty of *482 the trial judge in a hearing to determine habitual offender status. Likewise, any such proceeding should be brought in the state in which such conviction occurred, pursuant to that state's established procedures. Should such proceeding in the foreign state succeed in overturning the conviction, then relief should be sought in Mississippi by petition for writ of error coram nobis.
An examination of the basic nature of such a constitutionally defective decision is somewhat helpful in determining the role that such a conviction may play in the application of an habitual offender statute. In Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), (Douglas, J., concurring), Justice Douglas noted:
[A] guilty plea is rendered voidable by threatening physical harm, Waley v. Johnston [316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302], supra, threatening to use false testimony, ibid., threatening to bring additional prosecutions, Machibroda v. United States, [368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473], supra, or by failing to inform a defendant of his right of counsel, Walker v. Johnston [312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830], supra.
Id. at 266, 92 S.Ct. at 500, 30 L.Ed.2d at 435 (emphasis added).
The nature of constitutionally defective prior convictions as being voidable as opposed to void highlights two different aspects of their application in the instant case. First, unless such constitutional infirmity appears on the face of the conviction, or unless the conviction has been vacated via a collateral attack, the conviction may be used for the enhancement of sentence under an habitual offender statute. Secondly, the nature of a constitutionally defective conviction as being voidable highlights the fact that the proper challenge to such a defective conviction lies in a separate action brought expressly for that purpose.
Having addressed the duties of the trial court at a hearing to determine habitual offender status, we must decide whether the trial court in the instant case correctly fulfilled its duty at sentencing hearing. On this point the defendant returns again to the United States Supreme Court decision in Boykin, supra. He points to the three constitutional guarantees enumerated in Boykin, (1) the privilege against compulsory self-incrimination, (2) the right to trial by a jury, and (3) the right to confront one's accusers. His further assertion is that for a defendant's guilty plea to be knowing and voluntary, the trial court must specifically question him regarding those three guarantees, and that such questioning affirmatively and specifically appear on the face of the conviction. Further contention is that a "knowing" plea of guilty requires that the accused be informed of the fact that his conviction may be used in subsequent proceedings, where he may be determined to have habitual offender status.
Again we note that in Boykin, supra, the United States Supreme Court was dealing with a record which was totally silent on the issue of a knowing and voluntary plea of guilty. In the instant case, the face of the Kentucky conviction indicates that the defendant was sufficiently questioned to allow the trial judge to make a determination of the knowing and voluntary nature of the guilty plea. The face of the Kentucky conviction reads:
The Court then made the following inquiries of the defendant; (a) whether this was his personal decision; (b) whether such desired plea on his part was voluntary, (c) whether he knew he had the right to a trial by jury with assistance of counsel.
To all of these questions the defendant replied in the affirmative.
United States Courts of Appeals cases which have construed Boykin have expressly refused to give the expansive reading to Boykin that defendant Phillips suggests is required. In Stinson v. Turner, 473 F.2d 913 (10th Cir.1973), the Tenth Circuit Court of Appeals was asked to overturn a guilty plea which the trial judge had determined to be voluntary, but the record of the conviction showed no express waiver of the defendant's right against compulsory self-incrimination as an element of that guilty *483 plea. The Tenth Circuit refused to require a literal express waiver of the three constitutional guarantees involved in a plea of guilty. Noting that Boykin involved a silent record, whereas the case before the Court of Appeals did not, the Tenth Circuit held that the trial court had sufficiently ascertained that the guilty plea was knowing and voluntary. The court noted that the three constitutional guarantees enumerated in Boykin were for illustrative purposes only, indicating the gravity of the situation confronting the trial judge when he is called upon to determine the knowing and voluntary character of a guilty plea.
In Lockett v. Henderson, 484 F.2d 62 (5th Cir.1973), cert. den. 415 U.S. 933, 94 S.Ct. 1448, 39 L.Ed.2d 492, the Fifth Circuit Court of Appeals was confronted with a similar question. Citing Stinson v. Turner, supra, with approval, the Fifth Circuit held that Boykin did not require a literal, verbatim questioning by the trial court on the issue of whether the three enumerated Boykin elements were required to appear on the face of the conviction. It is significant that in both Lockett and Stinson, the Courts of Appeal were looking strictly to the face of the conviction. Although no longer may it be presumed from a silent record that a determination of the voluntariness of the guilty plea was made, from an affirmative showing of such on the face of the conviction, it must be presumed for the purpose of sentencing under the habitual offender statute that such guilty plea was constitutionally sufficient.
Last argument presented is that a prior conviction which is presently being challenged in a collateral proceeding cannot be used for the purpose of establishing habitual offender status. We conclude as follows: The mere fact that the defendant has chosen to collaterally attack a prior conviction has no effect upon the status of that conviction until such time as the conviction is vacated. This is in line with the language previously cited from Justice William O. Douglas indicating that constitutionally defective convictions are voidable. Until such time as they are actually voided, they may be used for habitual offender statute purposes. As stated above, a writ of error coram nobis is the form of remedy available to a defendant, in the event he is convicted and sentenced under the habitual offender statute, and subsequently is successful in his collateral attack based upon the constitutional defects of that conviction. See In Re Petition of Broom, 251 Miss. 25, 168 So.2d 44 (1964), which noted the scope and application of the writ of error coram nobis. See also, Jackson v. State, 418 So.2d 827 (1982) (not yet reported), where Justice Prather stated in effect that a prior conviction though "on appeal" is nonetheless a conviction under § 99-19-81, supra.
Facts outside the scope of the record before us cannot be considered by us here. In the instant case, the face of the record of the foreign convictions amply supports the trial court's decision to consider the prior Kentucky convictions as factors in sentencing the defendant under § 99-19-81, supra. As stated above, any attack upon a conviction from another state which goes beyond the face of the record of the conviction must be prosecuted in a separate proceeding. We find no reversible error and affirmance must be ordered.
AFFIRMED.
PATTERSON, C.J., SUGG and WALKER, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE, and PRATHER, JJ., concur.